Citation Nr: 1801834 
Decision Date: 01/10/18 Archive Date: 01/23/18

DOCKET NO. 17-16 584 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUES

1. Entitlement to an effective date prior to November 3, 1997 for the assignment of a 20 percent rating for service-connected lumbar strain with DJD.

2. Entitlement to service connection for high cholesterol.

3. Entitlement to service connection for headaches.

4. Entitlement to service connection for high blood pressure.

5. Entitlement to service connection for tinnitus.

6. Entitlement to service connection for obstructive sleep apnea, to include as secondary to service-connected lumbar strain with DJD.


REPRESENTATION

Veteran represented by: J. Michael Woods, Attorney
ATTORNEY FOR THE BOARD

M. Coyne, Associate Counsel


INTRODUCTION

The Veteran had a period of active duty for training (ADT) from June 18, 1981 to October 19, 1981, with additional verified periods of ADT in July 1989, June 1991, and August 1991. He also had reserve service in the California Army National Guard, and completed various periods of inactive duty training (IDT) from 1981 to 2009.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a June 2015 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Oakland, California. Although entitlement to service connection for sleep apnea was denied in the June 2015 rating decision, at that time entitlement to service connection for a sleep disorder was still on appeal from a December 2009 rating decision and was remanded to the Agency of Original Jurisdiction (AOJ) by the Board in an October 2016 decision for additional claim development. 

The October 2016 Board decision remanded all of the above listed claims to the RO pursuant to Manlincon v. West, 12 Vet. App. 238 (1999), for issuance of statement of the case (SOC). An SOC was issued in March 2017, and the Veteran filed a timely substantive appeal (VA Form 9) later in March 2017. These issues have been returned to the Board for review. The other issues that were remanded by the Board in its October 2016 remand are still under development at the (AOJ) and have not yet been returned to the Board for appellate review. Any of those issues that remain after completion of the remand development and return of the appeal to the Board will be the subject of a future Board decision.

The Board notes that the Veteran has provided inconsistent responses regarding his wishes to have a Board hearing concerning the issues on appeal. In August 2016, the Board contacted the Veteran to inquire whether he desired a hearing. The Veteran responded that he wished to withdraw any hearing requests.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a)(2) (2012).

The issue of entitlement to service connection for sleep apnea and tinnitus are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.


FINDINGS OF FACT

1. The Veteran submitted a freestanding claim for an earlier effective date for the assignment of a 20 percent rating for service-connected lumbar strain with DJD.

2. High cholesterol is not a disability for VA purposes.

3. There is insufficient evidence that the Veteran's high blood pressure condition was incurred during a period of ADT or as a result of an injury incurred during a period of ADT or IDT.

4. There is insufficient evidence that the Veteran has a headache condition and that the Veteran incurred a headache condition during a period of ADT or as a result of an injury incurred during a period of ADT or IDT.


CONCLUSIONS OF LAW

1. The criteria for an effective date prior to November 3, 1997 for the assignment of a 20 percent rating for service-connected lumbar strain with DJD have not been met. 38 U.S.C. § 7105 (2012); Rudd v. Nicholson, 20 Vet. App. 296 (2006).

2. Service connection for high cholesterol is not warranted. 38 U.S.C. §§ 101, 106, 1101, 1112, 1113, 1137 (2012); 38 C.F.R. § 3.303 (2017).

3. The criteria for entitlement to service connection for a high blood pressure condition have not been met. 38 U.S.C. §§ 101, 106, 1101, 1112, 1113, 1137 (2012); 38 C.F.R. § 3.303 (2017).

4. The criteria for entitlement to service connection for a headache condition have not been met. 38 U.S.C. §§ 101, 106, 1101, 1112, 1113, 1137 (2012); 38 C.F.R. § 3.303 (2017).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duty to Notify and Assist

With regard to the Veteran's earlier effective date claim, because the claim is being dismissed as a matter of law, the Veterans Claims Assistance Act of 2000 (VCAA) is not applicable to the Veteran's appeal. See 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; see also Pratt v. Nicholson, 20 Vet. App. 252 (2006); Mason v. Principi, 16 Vet. App. 129, 132 (2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001) (holding that the VCAA is not applicable to matters in which the law, and not the evidence, is dispositive); see also VAOPGCPREC 5- 2004 (explaining that under 38 U.S.C. § 5103 (a), VA is not required to provide notice of the information and evidence necessary to substantiate a claim where that claim cannot be substantiated because there is no legal basis for the claim or because undisputed facts render the claimant ineligible for the claimed benefit). 

With regard to the Veteran's headache, high cholesterol, and high blood pressure claims, as noted above these claims were remanded in October 2016 pursuant to Manlincon v. West, 12 Vet. App. 238 (1999). Among other directives, the October 2016 remand decision directed the AOJ to contact the Defense Finance and Accounting Service (DFAS) to verify the dates of the Veteran's periods of ADT and IDT with the California Army National Guard, and review the record and prepare a formal finding memorandum detailing any period of active service, ADT, or IDT. The Board notes that with regard to these two remand directives, the AOJ called DFAS several times and was informed that a DFAS customer representative had informed the AOJ that verification of the Veteran's ADT and IDT with the California Army National Guard could not be provided to a third party/ VA and provided instructions for the Veteran to request this information. The AOJ contacted the Veteran and provided him the instructions relayed by the DFAS customer service representative in March 2017. The AOJ also provided the Veteran a form that he could return to VA identifying his completed periods of ADT and IDT. Additionally, while the AOJ did provide a May 2017 memorandum, this memorandum identified the Veteran's period of ADT from June to October as "active duty" service, and did not discuss periods of ADT or IDT otherwise documented in the Veteran's personnel records. 

The Board notes that when it remands a claim to the RO it has a duty to ensure substantial compliance with the directives contained in that remand. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); Stegall v. West, 11 Vet. App. 268 (1998). Strict compliance, on the other hand, is not required. See id. Accordingly, if evidence is procured in a manner that deviates from the a prior remand, so long as the Board acknowledges the deviation and makes specific findings as to the reliability of the evidence despite the deviation, and those findings are supported by sufficient rationale, the Board may rely on that evidence. See D'Aries v. Peake, 22 Vet. App. 97, 106 (2008). 

In this case, the Board finds that there are sufficient personnel and service treatment records to verify certain periods of ADT or IDT completed by the Veteran. However, because the Veteran has to date, failed to identify a period or periods of ADT or IDT with regard to his high blood pressure and headache claims, further verification of specific periods of ADT or IDT is not warranted, and the AOJ made sufficient efforts to comply with the October 2016 remand directive with regard to contacting DFAS. The United States Court of Appeals for Veterans Claims (Court or Veterans Court) has held that "[t]he duty to assist is not always a one-way street [;] if a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence." Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). As the Veteran was given the opportunity to provide additional information, as well as instructions and relevant forms for procuring records that could be relevant to his claims based on information provided to VA by DFAS, the AOJ substantially complied with the DFAS-related remand instruction and provided sufficient assistance to the Veteran in this regard.

Additionally, with regard to the Veteran's high cholesterol claim, because high cholesterol is not a disability for VA compensation purposes, any identified period of ADT or IDT is not relevant to those claims. Moreover, although the AOJ did not completely comply with the remand directive regarding the creation of a memorandum verifying those periods of ADT or IDT that are documented by the records in the Veteran's claims file, the personnel and service treatment records procured provide reliable documentation of the periods of ADT or IDT summarized above in the "Introduction" section. Accordingly, as substantial, not strict, compliance with Board remand directives is required, the Board finds that the AOJ substantially complied with the Board's October 2016 memorandum remand instructions. Moreover, the Board notes that all other Board remand instructions applicable to the Veteran's high cholesterol, high blood pressure, and headache claims have been completed.

Finally, neither the Veteran nor his representative has raised any other issues with the duty to notify or duty to assist with regard to the Veteran's high cholesterol, high blood pressure, and headache claims. See Scott v McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument). As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Shinseki v. Sanders, 556 U. S. 396 (2009).


II. Earlier Effective Date Claim

The Veteran was initially granted service connection for a lumbar spine condition in an August 2005 rating decision, which assigned the Veteran an effective date of November 3, 1997 for his lumbar spine and also assigned a 20 percent rating. Although the Veteran filed a Notice of Disagreement (NOD) with this decision, he appealed only the assigned rating of 20 percent, not the effective date of the initial rating. However, when the Veteran filed a July 2015 NOD with a June 2015 rating decision that had continued the Veteran's 20 percent rating for his lumbar spine condition, he checked the box for effective date, despite the fact that no new effective date had been assigned. 

Generally, the effective date of an evaluation and award of pension, compensation or dependency and indemnity compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110 (a) (2012); 38 C.F.R. § 3.400 (2017).

However, the Board observes that there is no such thing as a freestanding claim for an earlier effective date, because to allow such a claim would be contrary to the principle of finality set forth in 38 U.S.C. § 7105. See Rudd v. Nicholson, 20 Vet. App. 296 (2006). In other words, applicable law afforded the Veteran up to one year to challenge the effective date of his initial lumbar spine rating. 38 C.F.R. § 20.302 (2017). Because the Veteran did not initiate a timely NOD with regard to the effective date of his initial lumbar spine condition, and the June 2015 rating decision did not assign a new effective date to the Veteran's initial lumbar spine rating or assign an effective date for an increased lumbar spine rating, the effective date assigned to the Veteran's 20 percent rating for his lumbar spine condition is final, and there is no other effective date for the Veteran to appeal.

A rating decision becomes final and binding if the Veteran does not timely perfect an appeal of the decision. 38 U.S.C. § 7105; 38 C.F.R. §§ 3.104 (a), 3.160(d), 20.200, 20.302, 20.1103 (2017). Previous determinations that are final and binding, including decisions regarding service connection, will be accepted as correct in the absence of collateral attack by showing the decision involved clear and unmistakable error (CUE). In this case, the Veteran is precluded from filing additional earlier effective date claims, other than on the basis of CUE.

In this case, the Veteran did not specify that he was disagreeing with the August 2005 rating decision; he stated that he was filing an NOD with the June 2015 rating decision, which, as discussed above, did not assign an effective date to the Veteran's lumbar spine condition. Furthermore, the July 2015 NOD did not discuss CUE. As such, the Board cannot construe the July 2015 NOD as a reasonable raised CUE motion to the effective date assigned in the August 2005 rating decision. Mindenhall v. Brown, 7 Vet. App. 271, 275 (1994) (stating where there are multiple decisions, a failure to specify the dates of the decision being collaterally attacked renders the pleading of CUE insufficient). Furthermore, the Board notes that the CUE is not discussed elsewhere in the record, and the RO did not adjudicate a CUE motion.

Accordingly, the Board finds that the Veteran's free-standing claims of entitlement to an earlier effective date for the 20 percent rating assigned for his lumbar spine disability is dismissed without prejudice. Sabonis v. Brown, 6 Vet. App. 426 (1994); Rudd v. Nicholson, 20 Vet. App. 296 (2006).

III. Service Connection

The Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). The evaluation of evidence generally involves a three-step inquiry. First, the Board must determine whether the evidence comes from a "competent" source. The Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007). The third step of this inquiry requires the Board to weigh the probative value of the evidence in light of the entirety of the record. 

Additionally, when the positive evidence supporting a claim and the negative evidence indicating a denial of the claim is relatively equal, the Veteran is entitled to the benefit of the doubt. See 38 U.S.C. §5107 (b); 38 C.F.R. §§ 3.102, 4.3 (2017). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the veteran. See id. 

Service connection may be granted for a disability resulting from disease or injury that is incurred in or aggravated by active military service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. To establish service connection for the claimed disorder, the three following criteria must be met: (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical, or in certain circumstances, lay evidence of a nexus between the claimed in-service disease or injury and the current disability. See 38 C.F.R. § 3.303; see also Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); Hickson v. West, 12 Vet. App. 247, 253 (1999). For the first criterion of a service connection claim, a disability is considered current so long as it exists at the time the claim is filed or during the pendency of the appeal. See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007).

Service connection may also be granted for disability resulting from disease or injury incurred during ADT, or injuries suffered during IDT to include when a cardiac arrest or a cerebrovascular accident occurs during such training. See 38 U.S.C. §§ 101 (24), 106. Reserve and National Guard service generally means ADT and IDT. ADT is full time duty for training purposes performed by Reservists and National Guardsmen pursuant to 32 U.S.C. §§ 316, 502, 503, 504, or 505. 38 U.S.C. § 101 (22); 38 C.F.R. § 3.6(c). IDT includes duty, other than full-time duty, performed for training purposes by Reservists and National Guardsmen pursuant to 32 U.S.C. §§ 316 , 502, 503, 504, or 505. 38 U.S.C. § 101(23); 38 C.F.R. § 3.6(d). Active military service includes active duty, any period of ADT during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in line of duty, and any period of IDT during which the individual concerned was disabled or died from an injury incurred or aggravated in line of duty or from an acute myocardial infarction, a cardiac arrest, or a cerebrovascular accident which occurred during such training. 38 U.S.C. § 1106; 38 C.F.R. § 3.6(a). Generally, an individual who has only Reserve or National Guard service (ADT or IDT with no active duty) is not a veteran as legally defined. In the service connection context, for example, this means that the presumption of soundness upon entry into service and the presumptive service connection provisions of 38 C.F.R. § 3.307, applicable to active duty, would not apply to ADT or IDT. 38 U.S.C. §§ 1111, 1112, 1137; 38 C.F.R. § 3.307.

A. High Cholesterol

High cholesterol is not considered a disability for VA compensation purposes. See 38 C.F.R. §§ 4.1, 4.10 (2017). VA has specifically found that diagnoses of hyperlipidemia, elevated triglycerides, and elevated cholesterol are actually laboratory results and are not, in and of themselves, disabilities for compensation purposes. See 61 Fed. Reg. 20,440, 20,445 (May 7, 1996). The existence of a current disability is the cornerstone of a claim for VA disability compensation. Degmetich v. Brown, 104 F. 3d 1328 (1997). In the absence of a disability for VA purposes, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Accordingly, an award of entitlement to service connection for high cholesterol is not warranted here. 38 U.S.C. §§ 101, 106, 1101, 111, 1112, 1113, 1137 (2012); 38 C.F.R. § 3.303 (2017). 

B. High Blood Pressure

A review of the record reveals that the Veteran has a current diagnosis of hypertension. VA treatment records from 2002 onwards document a formal diagnosis of hypertension in April 2010, with some findings as to elevated blood pressure readings prior to that date noted from approximately 2007 onwards. However, the Veteran has not provided a purported date of onset for his high blood pressure claim, and there is no lay or medical evidence of a high blood pressure condition during a period of ADT or as a result of an injury during ADT or IDT. Accordingly, the criteria for entitlement to service connection have not been met, and an award of service connection for a high blood pressure condition is not warranted. 38 U.S.C. §§ 101, 106, 1101, 1112, 1113, 1137 (2012); 38 C.F.R. § 3.303 (2017).

C. Headaches

A review of the record does not reveal that the Veteran has a headache condition. There are a few VA treatment records that note reports of acute on and off headaches in a 3 day period, and the Veteran reporting waking up with headaches in relation to not feeling refreshed after sleeping due to his sleep apnea condition in 2008, but there are also several recent VA treatment records in which the Veteran denies headache symptoms altogether, and VA treatment records do not document any ongoing treatment for headaches or headache symptoms. Additionally, the Veteran has not provided an alleged onset for any headache condition, and there is no lay or medical evidence indicating that a headache condition was incurred during a period of ADT or as a result of an injury during ADT or IDT. Accordingly, an award of entitlement to service connection for a headache condition is not warranted here. 38 U.S.C. §§ 101, 106, 1101, 1112, 1113, 1137 (2012); 38 C.F.R. § 3.303 (2017).


ORDER

The claim of entitlement to an effective date earlier than November 3, 1997 for the assignment of a 20 percent rating for service-connected lumbar strain with DJD is dismissed.

Entitlement to service connection for high cholesterol is denied.

Entitlement to service connection for high blood pressure is denied.

Entitlement to service connection for a headache condition is denied. 



REMAND

With regard to the Veteran's sleep apnea claim, the Board notes that a VA examination was requested in December 2017, and as such, it appears that this issue was certified to the Board prematurely, as additional claim development is still pending. Additionally, to the extent that the Veteran's attorney raised arguments with respect to sleep apnea as secondary to the Veteran's acquired psychiatric disorder, which is presently undergoing claim development by the AOJ, entitlement to service connection is inextricably intertwined with entitlement to service connection for an acquired psychiatric disorder. Parker v. Brown, 7 Vet. App. 116 (1994); Harris v. Derwinski, 1 Vet. App. 180 (1991). 

With regard to the Veteran's tinnitus claim, the Veteran's VA treatment records indicate that he reported that during ADT in the 1980s he worked in support of an artillery unit. He reported noise exposure starting in 1981 that was non-combat and training related. Accordingly, as the Veteran has a verified period of ADT in 1981and he has identified this noise exposure and onset of tinnitus symptoms relevant to this period of ADT, remand of this claim is required for procurement of a VA examination.

Finally, as a review of the record reveals that the Veteran is in currently in receipt of VA treatment for the conditions being remanded, any outstanding VA treatment records should be procured. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain the Veteran's outstanding VA treatment records and associate those records with the claims file. Efforts to obtain these records should be documented in the claims file. If these records cannot be located the Veteran must be notified. 

2. Schedule the Veteran for an examination with an appropriate clinician for his tinnitus. The entire claims file and a copy of this remand must be made available to the examiner for review, and the examiner must specifically acknowledge receipt and review of these materials in any reports generated.

a. The examiner must take a detailed history from the Veteran. If there is any clinical or medical basis for corroborating or discounting the reliability of the history provided by the Veteran, the examiner must so state, with a complete explanation in support of such a finding.

b. The examiner must provide opinions as to the following:

i. Whether it is at least as likely as not (50 percent or greater probability) that the Veteran's tinnitus was incurred during a period of ADT or as a result of an injury occurred during a period of IDT. The examiner should specifically elicit the approximate dates of an ADT or IDT reported by the Veteran, if possible.

c. The examiner must provide all findings, along with a complete rationale for his or her opinion(s), in the examination report. If any of the above requested opinions cannot be made without resort to speculation, the examiner must state so and provide a rationale for this conclusion, including an explanation of whether there is any potentially available information that, if obtained, would allow for a non-speculative opinion.

3. The AOJ must review the claims file and ensure that the foregoing development action has been completed in full. If any development is incomplete, appropriate corrective action must be implemented. If any report does not include adequate responses to the specific opinions requested, it must be returned to the providing examiner for corrective action.

4. After undertaking any necessary additional development, readjudicate the issues on appeal. If the benefits sought on appeal remain denied, in whole or in part, the Veteran and his representative must be provided with a Supplemental Statement of the Case and be afforded a reasonable opportunity to respond. The case should then be returned to the Board for further appellate review, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).




S. L. Kennedy
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs