Citation Nr: 21050001
Decision Date: 08/13/21 Archive Date: 08/13/21

DOCKET NO. 17-41 165
DATE: August 13, 2021

ORDER

Entitlement to an effective date earlier than May 12, 2013 for the award of service connection for chronic fatigue syndrome, to include on the basis of clear and unmistakable error in a June 2010 rating decision, is denied.

Entitlement to an effective date earlier than May 12, 2013 for the award of service connection for fibromyalgia, to include on the basis of clear and unmistakable error in a June 2010 rating decision, is denied.

FINDINGS OF FACT

1. In a May 1995 rating decision, the Veteran's claims for service connection for fatigue and "pain and weakness in the joints," claimed as due to an undiagnosed illness, were denied; following additional development, a final April 1997 rating decision readjudicated and continued the denials of service connection for "joint pain/weakness" and fatigue due to an undiagnosed illness. 

2. In November 2009, the Veteran requested to "reopen" claims for service connection for fibromyalgia and chronic fatigue syndrome; a final June 2010 rating decision denied his claim for service connection for fibromyalgia and declined to reopen his claim for service connection for chronic fatigue syndrome on the basis that no new and material evidence had been received.

3. In adjudicating the Veteran's claims for service connection for fibromyalgia and chronic fatigue syndrome in June 2010, the Regional Office is not shown to have committed the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error.

4. The Veteran's next application to reopen his claims for service connection for chronic fatigue syndrome and fibromyalgia was received by VA on March 12, 2013; no written communication that can be construed as a formal or informal claim to reopen those issues was received between the issuance of the final June 2010 rating decision and receipt of the March 12, 2013 claim to reopen.

CONCLUSIONS OF LAW

1. The June 2010 rating decision is final with respect to the denials of service connection for fibromyalgia and chronic fatigue syndrome. 38 U.S.C. § 7105; 38 C.F.R. §§ 3.156, 20.200, 20.201, 20.302, 20.1103.

2. The June 2010 rating decision denying service connection for fibromyalgia and chronic fatigue syndrome was not clearly and unmistakably erroneous. 38 U.S.C. § 5109A; 38 C.F.R. § 3.105.

3. The criteria for an effective date prior to May 12, 2013 for the award of service connection for fibromyalgia have not been met. 38 U.S.C. § 5110; 38 C.F.R. §§ 3.1(r), 3.156, 3.400.

4. The criteria for an effective date prior to May 12, 2013 for the award of service connection for chronic fatigue syndrome have not been met. 38 U.S.C. § 5110; 38 C.F.R. §§ 3.1(r), 3.156, 3.400

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the U.S. Army from November 1990 to June 1991, to include service in the Southwest Asia theater of operations during the Persian Gulf War. See 38 C.F.R. §§ 3.2(i), 3.317(e); DD-214 (noting service in Southwest Asia from January 1991 to May 1991). He also had service in the Army National Guard, to include a period of active duty for training from June 1990 to October 1990. His decorations include the Southwest Asia Service Medal and the Bronze Star Medal. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a November 2013 rating decision issued by the Department of Veterans Affairs (VA) Regional Office in North Little Rock, Arkansas.

In August 2020, the Veteran and his spouse testified at a virtual Board hearing before the undersigned Veterans Law Judge. A transcript of that hearing has been associated with the record.

As discussed in more detail below, in deciding the appropriate effective date(s) to be assigned for the Veteran's awards, the Board will consider his allegation to the effect that there was clear and unmistakable error in a June 2010 rating decision. Because the June 2017 statement of the case expressly addressed that contention in the first instance, stating that "we have determined no error exists in the 2010 decision," the Board's consideration of that question poses no risk of prejudice to the Veteran. 

Effective Date

As a threshold matter, the Board notes that in November 2013 the Regional Office awarded service connection for fibromyalgia and chronic fatigue syndrome, effective May 12, 2013. Because the Veteran filed a timely notice of disagreement with the November 2013 rating decision that established the effective date for the awards of service connection, and thereafter perfected his appeal, the Board properly has jurisdiction over these effective date issues. Cf. Rudd v. Nicholson, 20 Vet. App. 296, 299 (2006) (there is no such thing as a freestanding claim for an earlier effective date).

1. Entitlement to an effective date earlier than May 12, 2013 for the award of service connection for chronic fatigue syndrome, to include on the basis of clear and unmistakable error in a prior June 2010 rating decision, is denied.

2. Entitlement to an effective date earlier than May 12, 2013 for the award of service connection for fibromyalgia, to include on the basis of clear and unmistakable error in a prior June 2010 rating decision, is denied.

With regard to both issues listed above, the Veteran seeks earlier effective dates for the awards of service connection. He initially stated, "I feel that my effective date should be 11/3/2009, this is the date of my claim for fibromyalgia and chronic fatigue syndrome previously. At the time of this claim in 2009, I was diagnosed with chronic fatigue syndrome and fibromyalgia by my primary care physician (Dr. [B.]). This documentation was sent to the VA with my medical records at the time of previous claim." See November 2014 notice of disagreement. 

At the hearing, however, he clarified that he was seeking an even earlier effective date. See August 2020 Board hearing transcript, p.4. In support of that theory, the Veteran stated that he had had signs and symptoms of the disorders since 1991 and that he filed a claim benefits therefor in 1994. Id. The Veteran's spouse testified that the Veteran did not appeal (1) the initial 1994 rating decision because, "We had just had a child in 1992, dealing with a toddler, just general life and not knowing the VA procedures . . . . And until when the internet came about, you had to rely on personal actual people to help you, which there were times when we were misguided," and (2) the June 2010 rating decision because, at that time, "my husband had three surgeries six weeks apart . . . and they were life threatening. So we had challenges that were detrimental to his health." Id., p. 14. Finally, it was asserted that the June 2010 rating decision was clearly and unmistakably erroneous. In this regard, it was alleged that the Regional Office in June 2010 failed to properly adjudicate the Veteran's claims with consideration of a letter dated September 2009 from Dr. B. Id., pp. 3-4. That letter provided diagnoses of fibromyalgia and chronic fatigue syndrome, with symptoms dating back to 1991, and contained a positive medical opinion linking the disorders to service. Id., pp. 4, 9. 

In determining the proper effective date, the Board will specifically address all potential challenges to the finality of the prior rating decisions, as well as whether the June 2010 rating decision was the product of clear and unmistakable error because it failed to address the favorable September 2009 letter from Dr. B.

The determination with respect to the effective date to be assigned for of an award of compensation is generally governed by 38 U.S.C. § 5110(a), which states that "[u]nless specifically provided otherwise . . ., the effective date of an award based on an original claim [or] a claim reopened after final adjudication . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor. If an application is received within one year from a veteran's date of discharge or release, [t]he effective date of an award of disability compensation to a veteran shall be the day following the date of the veteran's discharge or release." 38 U.S.C. § 5110(b).

In this case, in a May 1995 rating decision, the Veteran's claims for service connection for fatigue and "pain and weakness in the joints," claimed as due to an undiagnosed illness, were denied. Following additional development, an April 1997 rating decision readjudicated and continued the denials of service connection for "joint pain/weakness" and fatigue due to an undiagnosed illness. The Veteran did not file a notice of disagreement and no new and material evidence was received within one year of the April 1997 rating decision. 

Thereafter, in November 2009, the Veteran requested to "reopen" claims for fibromyalgia and chronic fatigue syndrome. In support of his claim, he submitted evidence which included, among other things, additional service treatment records (which will be separately discussed in more detail, below). In a June 2010 rating decision, the Regional Office denied his claim for service connection for fibromyalgia and declined to reopen his claim for chronic fatigue syndrome on the basis that no new and material evidence had been received. The Veteran did not initiate an appeal of that decision by filing a notice of disagreement. In addition, although VA treatment records were created and in VA's constructive possession within one year of the June 2010 rating decision, those records were not "material" to the claims and therefore did not render the June 2010 rating decision non-final under 38 C.F.R. § 3.156(b) (2010). 

In light of the Veteran's spouse's testimony that the Veteran was inhibited from appealing the prior rating decisions, the Board has considered the doctrine of equitable tolling. The United States Court of Appeals for the Federal Circuit (Federal Circuit) and the United States Court of Appeals for Veterans Claims have held that in order to benefit from equitable tolling, a claimant must demonstrate three elements: (1) extraordinary circumstance; (2) due diligence; and (3) causation. Checo v. Shinseki, 748 F.3d 1373 (Fed. Cir. 2014); McCreary v. Nicholson, 19 Vet. App. 324, 332 (2005), adhered to on reconsideration, 20 Vet. App. 86 (2006). This is consistent with guidance provided by the United States Supreme Court. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies . . . . But the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect."). In order to obtain the benefit of equitable tolling, a claimant must generally show that the failure to file was the direct result of a mental illness that rendered him or her incapable of rational thought or deliberate decision making, or incapable of handling his or her own affairs or unable to function in society. See Barrett v. Principi, 363 F.3d 1316 (Fed. Cir. 2004). 

Here, notwithstanding the chaos of raising a toddler in the 1990s or the hardships the Veteran may have endured following a series of sequential back surgeries, the Board must find that equitable tolling is not for application. Significantly, the Veteran does not allege, and the record does not otherwise show, that either of these circumstances rendered the Veteran incapable of rational thought or decision-making or otherwise caused him to suffer from mental illness so severe that he would have been incapable of handling his affairs or functioning in society. Nor does the general statement of having been misguided at times suggest to the Board that there was some action on part of VA, such as being deliberately misled by a VA official, that might warrant equitable tolling. As such, while sympathetic to the difficulties he may have faced while seeking benefits over the years, the Board finds no basis for equitable tolling of the filing deadlines for appealing the prior rating decisions. Therefore, finality attaches to those rating decisions, including the most recent denial in June 2010.

Having found the prior June 2010 rating decision final, the Board has carefully reviewed the communications and evidence in the record following that denial. On review, the Board finds no written communication that can be construed as a formal or informal claim to reopen those issues, received between the issuance of the final June 2010 rating decision and receipt of the March 12, 2013 claim to reopen. Thus, there is no basis for awarding an earlier effective date than March 12, 2013 under the general provisions of 38 U.S.C. § 5110(a) concerning claims to reopen.

In view of the fact that the Veteran submitted additional service treatment records in November 2009, the Board has also considered the provisions of 38 C.F.R. § 3.156(c). Under the applicable version of 38 C.F.R. § 3.156(c)(1), if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided a claim, VA will reconsider the claim notwithstanding that an otherwise final rating decision has been entered. The application of this provision is tempered by 38 C.F.R. § 3.156(c)(3), which states, "An award made based all or in part on the records identified by paragraph (c)(1) . . . is effective on the date entitlement arose or the date VA received the previously decided claim, whichever is later." (Emphasis added).

Here, applying the version of § 3.156(c) then in effect, the Board finds no basis for assigning an effective date earlier than May 12, 2013. First, the documents at issue, though added after the May 1995 and April 1997 rating decisions first denying the claims were entered, were provided to VA and reviewed at the time of the later rating decision in June 2010. In fact, the June 2010 rating decision lists "Service treatment records from Reserve and Active Duty dated June 1988 to June 1991" as evidence it considered, whereas the rating decisions from the 1990s only identified having a 1988 ROTC examination/report of medical history and April 1991 separation examination of record.

Second, the addition of these records does not impact the effective date to be assigned because the eventual award of service connection in July 2014 was not based, in whole or in part, on the additional service records. The additional records did not contain a diagnosis or any in-service documentation of signs or symptoms of the claimed disorders or otherwise support any outstanding element needed to establish service connection.

Finally, the Board has also considered whether revision of the June 2010 rating decision is warranted on the basis of clear and unmistakable error (CUE). CUE is a very specific and rare kind of error. It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Simply to claim CUE on the basis that previous adjudicators improperly weighed and evaluated the evidence can never rise to the stringent definition of CUE. Neither can broad-brush allegations of failure to follow the regulations or failure to give due process, or any other general, nonspecific claim of error. Fugo v. Brown, 6 Vet. App. 40, 43-44 (1993).

In addition, failure to address a specific regulatory provision involves harmless error unless the outcome would have been manifestly different. Id. at 44. CUE is an administrative failure to apply the correct statutory and regulatory provisions to the correct and relevant facts. It is not mere misinterpretation of facts. Oppenheimer v. Derwinski, 1 Vet. App. 370, 372 (1991).

There is a three-part test to determine whether a prior decision is the product of CUE: (1) [e]ither the correct facts, as they were known at the time, were not before the adjudicator (i.e., more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied, (2) the error must be undebatable and of the sort which, had it not been made, would have manifestly changed the outcome at the time it was made, and (3) a determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question. Damrel v. Brown, 6 Vet. App. 242, 245 (1994) (quoting Russell v. Principi, 3 Vet. App. 310, 313-14 (1992) (en banc)); see also Pierce v. Principi, 240 F.3d 1348 (Fed. Cir. 2001).

Here, the Board has sympathetically reviewed the contentions advanced by the Veteran and his representative and finds that they have sufficiently pled CUE in the June 2010 rating decision. In pertinent part, it is argued that the June 2010 rating decision failed to consider a September 2009 letter from Dr. B. that provided crucial information with respect to the Veteran having been diagnosed with a qualifying chronic disability under 38 C.F.R. § 3.317 and the onset of signs and symptoms within a few months of his service in Southwest Asia during the Persian Gulf War. See Dr. B's letter dated September 2009 ("I am treating this patient for fibromyalgia and chronic fatigue syndrome for which he has had symptoms since 1991."). The Veteran stated in his November 2014 notice of disagreement that "[t]his documentation was sent to the VA with my medical records at the time of previous claim." Thus, it is essentially asserted that the June 2010 adjudicator did not have the correct facts before them when the claims were denied on the basis that "no fibromyalgia has been diagnosed" and there was no "evidence of a diagnosis of chronic fatigue syndrome."

The Board has reviewed the record and law at the time of the June 2010 rating decision and finds that there was no CUE in that rating decision, insofar as it relates to the AOJ's purported failure to recognize the favorable evidence contained in the September 2009 letter. Simply put, the greater weight of the evidence supports a finding that the September 2009 letter was not of record at that time. The first indicator is the actual letter itself, which is date stamped as received by the Regional Office on June 24, 2013. A second indicator is that the letter is also date-stamped as having been received by the Arkansas Department of Veterans Affairs (ADVA) on that same date, suggesting that the representative was not merely resubmitting a document it had received from the Veteran back in 2009. Third, the date-stamped letter was also accompanied by a signed statement from the Veteran that he was submitting "additional Dr statement & med[ical] records to be added to his claim."

In weighing the evidence, the Board finds the date stamps to be the most probative evidence for determining the actual date of receipt, especially in light of the inconsistencies in the Veteran's statements (i.e., indicating in a June 2013 statement that he was submitting an "additional Dr. statement," and later stating in November 2014 that "this documentation was sent to the VA with my medical records at the time of the previous claim."). Under the circumstances, it cannot be said that the Regional Office committed an undebatable error of the sort which, had it not been made, would have manifestly changed the outcome at the time it was made. 

For all of these reasons, the Board finds that there was no error in the June 2010 rating decision that denied service connection for fibromyalgia and declined to reopen the claim for chronic fatigue syndrome, based on the CUE theory that has been advanced.

The Board is not questioning the Veteran's belief that an earlier effective date is warranted, and regrets that a more favorable outcome cannot be reached. However, the Board is bound by the law. See Smith v. Derwinski, 2 Vet. App. 429, 432-33 (1992) (citing Office of Personnel Management v. Richmond, 496 U.S. 414, 426 (1990)). Under the facts and law as they exist, no revision of the effective date for the award of service connection for either fibromyalgia or chronic fatigue syndrome is warranted. The appeal must be denied.

 

 

DAVID A. BRENNINGMEYER

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board K. Gielow, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.